UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ALLEN-ANTHONY MARTIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. 5:25-cv-00548-CLS** |
| ) | |
| **REDSTONE FEDERAL CREDIT** ) | |
| **UNION,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

The plaintiff, Allen-Anthony Martin, is proceeding *pro se,* without the aid of counsel. He commenced this action on April 10, 2025. The complaint filed on that date alleged six claims against the defendant, Redstone Federal Credit Union ("Redstone"): *i.e.*, breach of fiduciary duty (Count I); "Trust Fraud and Malfeasance of Office" (Count II); "Default by Non-Response and Power of Attorney for Lien Filing" (Count III); "Violation of UCC § 9-201 — Enforcement of Security Agreement" (Count IV); "Trespass and Unreasonable Conduct" (Count V); and, "Violation of Constitutional Rights (Due Process) (Count VI). Doc. no. 1 (Complaint). The last two Counts, V and VI, alleged violations of plaintiff's constitutional rights. Accordingly, the court possesses federal question jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Redstone filed a motion to dismiss all of plaintiff's claims on May 21, 2025. Doc. no. 6. Plaintiff responded to the motion on May 23, 2025 (doc. no. 12), but then filed an amended complaint on May 28, 2025 (doc. no. 14), thereby rendering the initial motion to dismiss moot. Redstone filed a motion to dismiss the amended complaint on May 29, 2025, and also asked the court to enter an injunction prohibiting plaintiff from making any substantive filings (other than a response to the motion to dismiss) without leave of court. Doc. no. 15.[1] This opinion addresses defendant's motion to dismiss.[2]

## I. PLAINTIFF'S ALLEGATIONS

As an initial matter, the court observes that plaintiff's "amended complaint" (doc. no. 14) appears to be merely a revision of the claims alleged in Count III ("Default by Non-Response and Power of Attorney for Lien Filing") and Count IV ("Violation of UCC § 9-201 — Enforcement of Security Agreement"). Ordinarily, an amended complaint supersedes the original complaint, which becomes a legal nullity. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (citing *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006)). However, the court will assume, as Redstone does, that plaintiff intended the

---

[1] Redstone re-asserted the arguments advanced in its initial motion to dismiss and supporting brief (doc. nos. 6 & 7).

[2] The court ordered plaintiff to respond to the motion, and denied as moot Redstone's initial motion to dismiss. On May 30, 2025, plaintiff filed an objection to the aspect of Redstone's motion seeking a filing injunction. Doc. no. 17.

2

allegations contained in his original complaint (doc. no. 1) to be read together with the revisions to Counts III and IV contained in the "amended complaint" (doc. no. 14). The two pleadings thereby constitute plaintiff's statement of his six claims.[3] *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

As best as the court can discern, plaintiff's lawsuit centers around a document attached to his complaint, and entitled "UCC [Uniform Commercial Code] Financing Statement."[4] Plaintiff apparently filed the document in the State of Florida's "Secured Transaction Registry" on September 11, 2023. The document lists the Debtor's Names as: "ALLEN ANTHONY MARTIN TRUST©"; and "ALLEN ANTHONY MARTIN, NON-ADVERSE, NON-BELLIGERENT, NON-COMBATANT PRIVATE FOUNDATION." The same document lists the "Secured Party's Name" as "Allen-Anthony Martin." The section of the form entitled "Collateral" contains the following statement:

> This is the entry of collateral by Trustee/Secured Party on behalf of the Trust/Estate; ALLEN ANTHONY MARTIN TRUST© in the Commercial Chamber under necessity to secure the rights, title(s),

---

[3] The substance of the revisions is addressed in Part III of this opinion.

[4] Doc. no. 1-1, at ECF 1. "ECF" is an acronym formed from the initial letters of the name of a case filing system that allows parties to file and serve documents electronically (*i.e.*, "Electronic Case Filing"). When this court cites to pagination generated by the ECF header, it will, as here, precede the page number(s) with the letters ECF.

interest and value therefrom in and of the Root of Title from inception, as well as all property held in trust including but not limited to DNA, cDNA, cell lines, retina scans, fingerprints and all Debentures, Indentures, Accounts, and all the pledges represented by same included but not limited to the pignus, hypotheca, hereditments, res, the energy and all products derived therefrom nunc pro tunc, contracts, agreements, and signatures and/or endorsements, facsimiles, printed, typed or photocopied of owner's name predicated on the "Straw-man" Eris legis/Trust/Estate described as the debtor and all property is accepted for value and is Exempt from levy.  Lien places on debtor entities is for all outstanding property still owed but not yet returned to trust from entities such as municipalities, governments and the like, not on trust entity itself.  Trustee is not surety to any account by explicit reservation/indemnification. The following property is hereby registered and liened in the same: all Certificates of Birth Document [redacted in original], SSN/UCC Contract Trust Account-prepaid account Number [redacted in original] Exemption Identification Number [redacted in original], is herein liened and claimed at a sum certain $100,000,000.00, also registered: Security Agreement No. 03131982-AAM-SA, Hold Harmless and Indemnity Agreement No. 03131982-AAM-HHIA, Copyright under item no.: 03131982-AAM-CLC Adjustment of this filing is in accord with both public policy and the national Uniform Commercial Code.  Trustee/Secured Party Allen-Anthony: Martin, is living flesh and blood human being sojourning upon the land/ground/soil of the land known as Alabama, and not within fictional boundaries, territories nor jurisdiction of any fictional entity including fictional Federal geometric plane(s).

Doc. no. 1-1, at ECF 1.  Plaintiff signed his name as "Secured Party."  He alleges that the UCC form is evidence that he is a beneficiary of a "Cestui Que Vie Trust,"[5] with an enforceable security interest.[6]

---

[5] That reference is characteristic of so-called "sovereign citizen" complaints.  *See, e.g., Potter v. United States*, 161 Fed. Cl. 24, 28-29 (Fed. Cl. 2022) ("Sovereign citizens also sometimes reference the 'Cestui Que Vie Act of 1666' or a 'cestui que vie' trust, as support for their arguments in court.") (footnote omitted).

[6] Doc. no. 1 (Complaint), at 1.

Plaintiff alleges that he applied for a $10,000 loan from Redstone "under the Cestui Que Vie Trust, a legally binding instrument that designated [Redstone] as the Trustee responsible for administering funds on behalf of the Plaintiff."[7] Redstone denied plaintiff's loan application on May 6, 2024.[8] Plaintiff contends that Redstone's denial of the loan application was a breach of fiduciary duty and fraud.[9] Plaintiff also alleges that Redstone failed to adequately respond to the requests for information and other "notices" that he sent to defendant.[10] Plaintiff further states that:

> On November 1, 2024,[11] Plaintiff attempted to resolve the dispute in person by visiting Defendant's physical location and speaking with a representative regarding the denial of the loan and failure to respond to his requests.
>
> Despite Plaintiff's legitimate attempt to address the matter, Defendant's employees issued a trespass notice against Plaintiff and called law enforcement. Plaintiff was stalled in the office for 20 minutes. Law enforcement officers (5 of them) proceeded to aggressively handle Plaintiff and pat him down before attempting to physically remove him from the bank with no explanation. This action [was] done by Officer Emani Richardson Badge #20027. Once outside, Defendant's representative handed Plaintiff the notice and told him it was enforceable for all locations until legal counsel contacted him. Plaintiff did not receive any explanation for this action.

Doc. no. 1 (Complaint), at 9-10 (alteration supplied). Plaintiff contends that

---

[7] *Id.* at 2.

[8] *Id.* at 3.

[9] *Id.* at 4; *see also* doc. no. 1-1, at ECF 3-5, 7-8, 9-14.

[10] *Id.* at 7.

[11] A Redstone Federal Credit Union "Notice of Trespass Warning," dated **October** 1, 2024, is attached to the Complaint. Doc. no. 1-1, at ECF 2.

Redstone's conduct was unlawful.

## II.  STANDARD OF REVIEW

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis supplied).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in the *Iqbal* opinion:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555].  Nor does a complaint suffice if it tenders "naked assertion[s] devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

6

unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 409 F.3d at 157-58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alteration supplied).

7

### III.  DISCUSSION

Redstone first contends that plaintiff's complaint is an impermissible "shotgun pleading," because it "is a lengthy, largely repetitive collection of irrelevant facts and citations to legal authorities that offer no apparent support for any colorable claims against Redstone."[12]  The court agrees.  Even so, there are other, substantive reasons that plaintiff's complaint cannot survive defendant's motion to dismiss.

### A.  "Sovereign Citizen" Theories

Redstone argues that plaintiff's complaint should be dismissed in its entirety because it relies on "sovereign citizen" theories that have been widely rejected by courts as frivolous.[13]

The basis for theories espoused by adherents of the sovereign citizen movement has been described by another district court as follows:

> The foundation of [a sovereign citizen] claim is equal parts revisionist legal history and conspiracy theory.  Supposedly, prior to the passage of the Fourteenth Amendment, there were no U.S. citizens; instead, people were citizens only of their individual states.  Even after the passage of the Fourteenth Amendment, U.S. citizenship remains optional.  The federal government, however, has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards.  With these contracts, an individual unwittingly creates a fictitious entity (*i.e.*, the U.S. citizen) that represents, but is separate from, the real person.

---

[12] Doc. no. 7 (Defendant Redstone Federal Credit Union's Brief in Support of its Motion to Dismiss), at 5.

[13] *Id.* at 5-8 (collecting cases).

> Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship. However, the government cannot hold the profits it makes from this use of its citizens and their property in the general fund of the United States because doing so would constitute fraud, given that the profits technically belong to the actual owners of the property being pledged (*i.e.*, the real people represented by the fictitious entities). Therefore, the government holds the profits in secret, individual trust accounts, one for each citizen.

*Bryant v. Washington Mutual Bank*, 524 F. Supp. 2d 753, 758-59 (W.D. Va. 2007) (alteration supplied). Those beliefs manifest as "names written in all capital letters and the same names written with just the initial letters capitalized." *Wood v. United States*, 161 Fed. Cl. 30, 34 (Fed. Cl. 2022). A sovereign citizen plaintiff may reference a "cestui que vie" trust, ostensibly based upon the Cestui Que Vie Act of 1666, *see id.*, and seek to validate the so-called trust through the filing of UCC financing statements, in which he lists himself as both the secured party and the debtor. *See Bryant*, 524 F. Supp. 2d at 759.

Although plaintiff disavows the characterization of his claims as based upon "sovereign citizen" ideology,[14] his complaint contains hallmarks of those discredited theories, as illustrated by the contents of the UCC Financing Statement set out above.

Upon review of plaintiff's complaint, the court concludes that Counts II ("Trust Fraud and Malfeasance of Office), III ("Default by Non-Response and Power of

---

[14] Doc. no. 12 (Plaintiff's Response to Motion to Dismiss), at 1, ¶ 1.

Attorney for Lien Filing"), and IV ("Violation of UCC § 9-201 — Enforcement of Security Agreement") of plaintiff's complaint are due to be dismissed because each is based upon frivolous, sovereign citizen theories, as opposed to cognizable legal claims.

1. **"Trust Fraud and Malfeasance of Office" (Count II)**

Plaintiff alleges in Count II that Redstone "has committed **trust fraud** and **malfeasance of office** by intentionally denying Plaintiff access to the trust funds and refusing to respond adequately to Plaintiff's legitimate inquiries."[15]  He further states that:

> [Redstone's] failure to provide a written agreement or documentation related to Plaintiff's trust interest is a violation of the **Statute of Frauds (1666 Act)**, which requires contracts involving interests in land or property rights, including trust agreements, to be evidenced in writing.

Doc. no. 1 (complaint), at 5 (alteration supplied, boldface type in original).  Plaintiff also invokes the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, contending that Redstone's conduct in denying his loan application and failing to adequately respond to his notices constitutes "a pattern of racketeering activity," as defined by that statute.[16]

Plaintiff's claim of "Trust Fraud and Malfeasance of Office" is not based on

---

[15] Doc. no. 1 (Complaint), at 5 (boldface type in original).
[16] *Id.* at 6.

any recognized cause of action under Alabama or federal law. Instead, it is "incomprehensible and replete with the legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement." *Sealey v. Branch Banking and Trust Company*, No. 2:17cv785-MHT-SMD, 2019 WL 1434065, at *2 (M.D. Ala. Feb. 21, 2019). *See also Sovereign Citizens: A Cult Movement that Demands Legislative Resistance*, 17 Rutgers J. L. & Religion 153, 157 (2015) ("[Court] filings [by 'sovereign citizens'] are written in a code-like language that judges, lawyers, and other court staff usually cannot understand. This is because sovereigns believe that if they find the right combination of words, punctuation, ink color, and timing, they can obtain anything they want.") (alterations supplied and footnotes omitted).

Additionally, plaintiff has not alleged facts that would support a civil RICO claim. To prevail on such a claim, a plaintiff "must prove three essential elements: (1) a violation of [18 U.S.C. §] 1962; (2) injury to business or property; and (3) that the violation caused the injury." *Avirgan v. Hall*, 932 F.2d 1572, 1577 (11th Cir. 1991) (alteration supplied). Plaintiff has failed to allege facts that support any of the requisite elements.

### 2. "Default by Non-Response and Power of Attorney for Lien Filing" (Count III)

Count III of plaintiff's complaint suffers from the same affliction. Plaintiff

states, in part:

> By failing to respond within five business days to Plaintiff's second formal notice, Defendant's non-response has implicitly granted Plaintiff a **Power of Attorney (POA)**, as allowed by law in circumstances where a fiduciary or trustee fails to perform its duties and obligations.  This implied POA allows Plaintiff to act on Defendant's behalf, including the right to file a **Claim of Lien** against Defendant and any third parties involved, for the amount of $1,000,000 per recipient, as stipulated in Plaintiff's UCC-1 filing and the fee schedule attached hereto as Exhibit A.  This claim of lien is fully enforceable by Plaintiff as a secured party and creditor of the trust.
>
> By failing to respond within five business days to Plaintiff's second formal notice, Defendant's non-response has implicitly granted Plaintiff a **Power of Attorney (POA)**, as allowed by law in circumstances where a fiduciary or trustee fails to preform its duties and obligations.  This implied POA allows Plaintiff to act on Defendant's behalf, including the right to file a **Claim of Lien** against Defendant and any third parties involved, for the amount of $1,000,000 per recipient, as stipulated in Plaintiff's UCC-1 filing and the fee schedule attached hereto as Exhibit A.  This claim of lien is fully enforceable by Plaintiff as a secured party and creditor of the trust.

Doc. no. 1 (Complaint), at 7.  The "amended complaint" states, with respect to that Count:

> Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 11.[17]
>
> Defendant's failure to respond within five business days to Plaintiff's second notice constitutes default by non-response, which would invoke the POA [Power of Attorney] entitling Plaintiff to take legal action.  By failing to respond to Plaintiff's second formal notice within the

---

[17] Plaintiff's reference to "paragraphs 1 through 11" is confusing.  The only numbered paragraphs in the original complaint appear in the "Prayer for Relief."  *See* doc. no. 1 (Complaint), at 11-13.

> stipulated 5-business-day period, Defendant's non-response constitutes an implied Power of Attorney allowing Plaintiff to act on their behalf and file a Claim of Lien, as provided in the UCC and related agreements.
>
> This POA is invoked due to Defendant's breach of fiduciary duty and failure to fulfill obligations as set forth in the trust agreement and UCC filings. Plaintiff seeks to enforce the Claim of Lien for the amount of $1,000,000 per recipient.

Doc. no. 14 (Amended Complaint), at 1 (alterations supplied). Plaintiff's allegations, taken as a whole, are: incomprehensible and nonsensical; based on rejected sovereign citizen theory; and relate to a fictional trust. For those reasons, they do not support a cognizable claim under Alabama or federal law.

### 3. "Violation of UCC § 9-201 — Enforcement of Security Agreement" (Count IV)

Plaintiff essentially recasts the claim a third time in Count IV, adding references to the UCC, ostensibly in an attempt to bolster his "legalese." He states:

> Plaintiff is a secured party in relation to the trust and has duly filed a UCC-1 Financing Statement (#202302477403) with the Florida Secretary of State, which perfects Plaintiff's security interest as the principal creditor of the trust. Under UCC § 9-201, Defendant is legally obligated to recognize and act upon Plaintiff's secured interest as evidenced by the UCC-1 filing. By denying Plaintiff access to the trust funds and failing to respond to formal notices, Defendant has wrongfully impaired Plaintiff's security interest and violated Plaintiff's rights under the Uniform Commercial Code, including the failure to comply with **UCC § 9-609** (relating to enforcement of a security agreement. . . . The Defendant's actions, including the wrongful denial of access to the trust and failure to respond to formal notices, undermine Plaintiff's legal rights as a secured party under the Uniform Commercial Code, thus impairing Plaintiff's ability to enforce the security agreement.

13

Doc. no. 1 (Complaint), at 8 (ellipsis supplied).  Plaintiff's amended complaint adds the following:

> Plaintiff is a secured party in relation to the trust and has duly filed a UCC-1 Financing Statement (#202302477403) with the Florida Secretary of State, which perfects Plaintiff's security interest as the principal creditor of the trust.  Under UCC § 9-201, Defendant is legally obligated to recognize and act upon Plaintiff's secured interest as evidenced by the UCC-1 filing.
>
> By denying Plaintiff access to the trust and failing to respond to formal notices, Defendant has wrongfully impaired Plaintiff's security interest and violated Plaintiff's rights under the Uniform Commercial Code.  Furthermore, Defendant's failure to provide a written contract constitutes a violation of the Statute of Frauds.

Doc. no. 14 (Amended Complaint), at 2.

As defendant aptly states, "regardless of plaintiff's legal theory, claims based on Redstone's failure to provide the plaintiff access to illusory trust funds or to respond to legally meaningless notices have no merit and should be dismissed."[18]  The court agrees.

In short, Counts II, III, and IV of plaintiff's complaint are due to be dismissed as frivolous.

## B.     Breach of Fiduciary Duty (Count I)

Plaintiff alleges that Redstone breached its fiduciary duty "by denying access to the trust funds and failing to act in Plaintiff's best interest, resulting in financial and

---

[18] Doc. no. 7 (Redstone's Brief in Support of its Motion to Dismiss), at 12.

emotional harm" — presumably by denying plaintiff's loan application.[19] To prevail on a claim of breach of fiduciary duty, a plaintiff must show: "(1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach." *Regions Bank v. Lowery*, 101 So. 3d 210, 219 (Ala. 2012). It is well settled under Alabama law that, absent circumstances not present here, "the relationship between a bank and its customer [is] a creditor-debtor relationship that does not impose a fiduciary duty on the bank." *Power Equipment Company, Inc. v. First Alabama Bank*, 585 So. 2d 1291, 1297 (Ala. 1991). Accordingly, Redstone's denial of plaintiff's loan application does not support a claim of breach of fiduciary duty, and this claim fails.

**C.    Claims Based Upon Constitutional Violations (Counts V and VI)**

Counts V and VI of plaintiff's complaint allege that Redstone violated his constitutional rights. In Count V, plaintiff alleges that Redstone's actions in summoning law enforcement officers to remove plaintiff from Redstone's premises violated his Fifth and Fourteenth Amendment rights, as protected by 42 U.S.C. § 1983. Count VI alleges that Redstone deprived plaintiff of his property — *i.e.*, the so-called trust funds — without due process of law.

Section 1983 provides, in pertinent part, that:

---

[19] Doc. no. 1 (Complaint), at 4.

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person with in the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis supplied). Plaintiff's claims must fail for the simple reason that Redstone is a private entity and cannot be sued for constitutional violations under § 1983 or otherwise. *See, e.g., Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (holding that the Fourteenth Amendment "does not erect a shield against merely private conduct, however discriminatory or wrong").

With respect to Count V, the fact that "law enforcement" officers were allegedly involved in plaintiff's removal from Redstone's premises does not make Redstone liable under § 1983 for any unconstitutional acts that may have occurred. With respect to Count VI, in addition to the fact that Redstone is a private actor, there were no "trust funds" or other property of which plaintiff could be deprived. Accordingly, plaintiff has failed to state a claim upon which relief may be granted in Counts V and VI.

**D.    Federal Rule of Civil Procedure 11**

Finally, the court must address plaintiff's use of non-existent case citations in his complaint and amended complaint. Of the twelve citations to legal authority

contained in the complaint, eight are "fake."[20]  Further, all five cases cited in plaintiff's amended complaint do not exist.[21]  As just one example, in Count I of the complaint, plaintiff cites "*Wells Fargo Bank, N.A. v. Bank of America*, 121 Cal. Rptr. 3d 517 (2011)," and states ""[t]his case discusses the elements of a fiduciary duty and the breach thereof, particularly in the context of corporate and financial institutions."[22]  A Westlaw search of that citation leads to *People v. Xinos*, a case that involves a motion to suppress information obtained from a criminal defendant's "event data recorder" in a vehicular manslaughter case.

As stated previously, complaints drafted by *pro se* plaintiffs are treated with more leniency than those prepared by attorneys.  Even so, that leniency does not extend to the duty of candor to the court required of *all* parties — including *pro se* litigants — imposed by the Federal Rules of Civil Procedure.  Specifically, Rule 11(b) states that

> [b]y presenting to the court a pleading, written motion or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or *unrepresented party* certifies that, to the best of the person's

---

[20] The citations to non-existent cases that appear in plaintiff's complaint are: *Wells Fargo Bank, N.A. v. Bank of America*, 121 Cal. Rptr. 3d 517 (2011); *In re Estate of Brodie*, 661 P.2d 145 (1983); *In re Connelly*, 21 F.3d 1423 (1994); *Allied Steel & Conveyor Co. v. U.S.,* 256 U.S. 148 (1921); *Calif. State Board of Equalization v. Tarrant,* 117 Cal. App. 3d 611 (1981); *Citibank (South Dakota, N.A. v. Jackson*, 460 F.3d 768 (7th Cir. 2006); *In re J.P. Morgan Chase Bank*, 614 F.3d 290 (2d Cir. 2010); *In re Safeway Stores, Inc.*, 99 B.R. 525 (Bankr. N.D. Tex. 1989).  Doc. no. 1 (Complaint), at 4-9.

[21] *See* doc. no. 14 (Amended Complaint), at 1-2.

[22] Doc. no. 1 (Complaint), at 4.

> knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * * *
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law[ ].

Fed. R. Civ. P. 11(b)(2) (alteration, emphasis, and ellipsis supplied). As one judicial officer succinctly stated: "Non-existent law is indeed the opposite of existing law" and, accordingly, violates Rule 11. *Rollins v. Premier Motorcar Gallery, Inc.*, No. 4:24-cv-413-MW-MAF, 2025 WL 2166019, at *5 (N.D. Fla. July 15, 2025).

Although such conduct may be sanctionable under Rule 11, the court will not take further action at this time in light of the disposition of defendant's motion. However, plaintiff is **strongly cautioned** that any future pleadings, motions, or other papers submitted to this court or any other must comply with Rule 11.

## IV.  CONCLUSION

For all of the foregoing reasons, Redstone's motion to dismiss is due to be granted.

Further, upon review of the pleadings, Redstone's motions to dismiss, and plaintiff's responses, the court concludes that plaintiff's complaint could not be cured by amendment. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the 'complaint as

18

amended is still subject to dismissal.'") (alteration supplied and citation omitted). A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

    **DONE** and **ORDERED** this 19th day of September, 2025.

                                                  _____
                                                  Senior United States District Judge